I want to add, and all of you, it doesn't seem fair that it's just for the court and us. So, plus all of you. All right. Good morning. Case number one is numbers 15-2432, 15-2447, United States v. Gries and McCullers. And Mr. Matt, hey, how are you? I know. You haven't changed. Nor have you. Liar. The first words out of his mouth is a lie. If it pleases the court, my name is David Mejia. And with Laura Paul, it's pronounced Mr. Gries and Mr. James McCullers. If I may begin, the issue I'd like to discuss and focus on primarily in the time I have here this morning is whether the evidence was sufficient as a matter of law, in fact, to support the convictions and sentences on counts two and three. The defendants were charged essentially in what is a three, four-count indictment, the first being possession or distribution of child pornography or conspiracy to do so. We don't question the adequacy of evidence to support that conviction and sentence for which each received 20 years, which was the maximum under law, that carries five to 20 years. The sexual exploitation of children provision found at 18 U.S.C. 2251 and the child exploitation enterprise provision at 18 U.S.C. 2252, I submit to the court essentially are enhancement provisions. What they do is take what is the substantive crime or conspiracy to commit the substantive crime as count one and enhance to 15 to 30 years on count two and 20 years to life on count three for the conduct that comprises essentially count two, which is the child exploitation provision. Anyone who uses a minor to engage in this kind of sexual activity and then films it, and beyond that, this is the most important component of our case, gives notice and advertisement offering it, commits a violation of that provision. Now, advertisement of child pornography is rarely, if ever, going to be truly public, given the desire, of course, to avoid law enforcement. So why would a private group with many members be exempted? I mean, is there statutory language limiting it to public dissemination? Well, we look to the essential elements, and we look to the fact of what is notice and what is advertisement. We've cited Merriam-Webster's, and the courts have talked about Merriam-Webster's. We've talked about the difference essentially between somebody who possesses something, which is contraband, and then somebody who dispenses or delivers it or transfers it to another. That, of course, is distribution. That actually are the predicate offenses or the facts or the conduct that comprise count one. Beyond that, notice and advertisement enhances it. Notice and advertisement, it is our position, and it's our position in terms of the facts of this case, is that when there are a dozen or less people all in one confined closed group who have usernames and who have layers of encryption, and by invitation only and by group only, confined to that group, traded with each other, does not meet the acts and conduct Congress was intended to prohibit. What was Congress intending to accomplish by that language? I think Congress was intended to prohibit first, under the child exploitation law, first the actions or conduct of doing this with a child. But let's focus just on that language about notice and advertisement. What were they trying to do? I think making it available to others in the public, making to say, I have this for you. If you contact me, I will make this available to you. I will distribute this to you. And why is that something Congress would particularly want to prohibit? Because it is the interest of the public in this. It is the interest of those members of the public who participate in this very horrific conduct that they want to curtail. And they'll curtail it by making anybody who engages in this. Congress wants to shrink the market, right? Congress wants to eliminate that market. And they eliminate the market by eliminating the act. Isn't that true also with respect to the people in the group? I mean, Congress wants, as long as these guys can get new files, have new pictures, the group continues, it thrives. The trading that goes on within the group thrives. Why is it any different whether you're advertising to the general public or you're advertising to these people who are really nothing more than a specialized market, aren't they? Right, because it's a closed group doing it with each other. They themselves who go into the public marketplace and find it, go online and find it, or see an advertisement and find it and have it, they're committing count one. They are possessing and receiving. But the private Internet group is just one way of trying to avoid detection by law enforcement. It doesn't immunize the perpetrators from the criminal statute. Right, well, the provision itself looks to enhance from the first count. And it's our position, respectfully, that what this essentially does is this is a larger, greater conduct. This is bigger than just possessing it and trading it with another person. To possess it and trade it with another person back and forth over a 10-year time period of a closed group of 12. I don't see why trading within the group isn't as pernicious to the development of the market as in noticing this and advertising to the general public. Right, well, there is some, I guess, abstract discussions as to whether one can aid and abet a conspiracy by being a customer of a conspiracy. We know that case law. We know that somebody, as a customer of something, can commit that crime. But if you wanted to enhance beyond that, those which are actually in the marketplace, I mean, if you looked at this, for instance, like the Hollywood film industry, people who are in a movie club and trade it with each other, even large libraries of it, which is here, a closed group of 10 or 12 people, they are not West Coast Video. They're not Netflix. They're not making these movies. They're not exploiting the people in the movies. But isn't it possible and even likely that members of one such private group have membership in other similarly closed groups so that the child pornography that gets disseminated in one group is likely to find itself to another, I mean, just as effectively as if the groups were not private? Right. Then I think, Your Honor, we're talking about multiple conspiracies. And again, multiple conspiracies then would be multiple violations of 18 U.S.C. 2252A, which is count one. You know, the point we make here is this. These two individuals are guilty of count one. They've received the maximum punishment for that. But then to go on with that to say, okay, now we're going to carve out from your conduct, which comprises count one, over and over again and make it an enhanceable offense because you notice and advertise, I just don't believe it fits here. Does this argument even matter in light of the double jeopardy violation for the multiple convictions, the CCE? Right. Well, the double jeopardy argument here in that you look at it and say, okay, if you accept what His Honor Judge Ripple says, then actually count three could be a lesser included of count one because count three is essentially these multiple acts of three or more people, three or more victims. Well, no, but the cases say that when there's a CCE conviction and an embedded conspiracy conviction, the conspiracy conviction is the lesser included of the CCE. The conspiracy conviction has to go. Absolutely. It merges with the CCE and resentencing is necessary. Only one conviction can be entered. That's pretty much solid law in this and other circuits. And that's why there's no question but that counts one and two must go. Right, so we don't really have to decide this notice or advertisement issue because the two conspiracy counts have to be dismissed. If you're rejecting my argument in whole, yes, then you don't have to do that. That's why my second argument essentially is that the alternative. But you know you're in trouble. Am I out of time? Yeah. Okay, well. Remember the days when I could give you hours? Thank you very much for whatever little time I have to rebuttal. Thank you. Good morning. May it please the Court, my name is Laura Paul and I'm here for John Grise. Your Honors, even if the Court ultimately rejects our allegations of error in counts two and three, Mr. Grise's sentence violates Booker in that it is greater than necessary to achieve the sentencing goals of 3553. Mr. Grise committed an offense that is very typical. Anyone convicted of count one would have been involved in largely the same activities that he was involved in. And there was no massive transfer of files on his part through the FTP system. All of his transfers that the government brought to trial were Internet relay chat transfers. There was no abuse of children. There was no contact with children. Certainly no production. And other defendants in this case had those in their 3553 considerations. And Mr. Grise received a double sentence. Now, he didn't testify at trial, so certainly he wasn't entitled to a 5K or anything like that. But he cooperated with the police when he was arrested. And there was evidence presented at sentencing that there was a very low risk of recidivism that wasn't credited by the trial court. There was evidence that he had good community support, and his age when he would be released under the higher end of the guidelines would be very high. And the trial court credited none of this for reasons that were unsupported by facts, just saying that if somebody doesn't stop you, nobody will. And there weren't any facts to show that he would reoffend. The government didn't provide any facts. It seemed like more of a trial tax to give him the maximum sentence on these convictions. And for those reasons, we would ask the court to remand this for sentencing even if the court declines to agree with our arguments on counts 2 and 3. Thank you. Thank you. Good morning, Ms. Stamper. Good morning. May it please the court, Gwen Stamper, on behalf of the United States. Defendant's sufficiency claim is unsupported by fact and law. As a legal matter, there was no manifest miscarriage of justice in this case. There was overwhelming and undisputed evidence presented at trial that shows that in online chat rooms, the defendants and other conspirators used descriptive language to inform each other of newly available child pornography available for distribution. Now, in considering whether conduct falls within the advertising conspiracy, is there any minimum number of persons to whom it must be advertised? I mean, could a conversation between a few family members suffice? It could, Your Honor. In fact, it would be possible to send an email to a friend or colleague informing them of a baseball ticket that is available for sale or just simply to give away for free. Defendant's attempt to read in an arbitrary number into 2251 D1A is not supported by the text of the statute or by legislative history. What does the content of the notice have to say to comply with the statute? The notice has to inform and possibly induce others of the availability, in this case, of child pornography available for sale. And because the statute involves... Sale or trade? Excuse me? Sale or trade? Specifically, Your Honor, it is not only sale or trade. It prohibits any notice or advertising, seeking or offering to provide or receive pictures of minors engaged in sexually explicit conduct. You said sale, limited to sale. That's where I stopped. Yes, Your Honor, although in this case the images were not for sale. They were distributed without compensation. So, I mean, basically it's a barter system. That's correct, Your Honor. That's correct, Your Honor. And there is nothing in the statute of 2251 D1A that requires a particular number of people. Because the statute uses plain, everyday words, we look to the dictionary meaning. It doesn't get you very far, does it, looking to the dictionary? I mean, it's a very simplistic way of doing it, but you look at the dictionary, I think both of you can have an arrow for your quiver in those dictionary definitions. That's true, Your Honor, but it bears noticing that there is no public component. Well, in two of the six advertising definitions, there is a public component. But of the 18 definitions of notice, there are zero definitions that involve a public component. And there is nothing in the legislative history that suggests that Congress intended to prohibit this to small groups. Wouldn't it be better to look at the terms of the statute, advertised notice, in terms of the context in which they appear in the statute in trying to give some meaning to them? And even, my gosh, look at the legislative history. Correct, Your Honor. 2255 was enacted in 1986 as an attempt by Congress to capture the increasingly sophisticated means by which traders and distributors of child pornography were distributing child pornography online. Since you have both the contextual argument and the legislative history argument, I really don't see why you rely, as your first argument, on this dictionary argument. I understand, Your Honor. As a final argument, as Your Honor mentioned, it defies reason that defendants' efforts to conceal their criminal conduct through the use of private online chat rooms should insulate them from criminal liability. And as a factual matter, defendants claim that this was a closed group of 12 people is not supported by the record. The group did not have 12 people. But B2 testified that there were 25 to 30 members of the conspiracy, and this is supported by the record. In Volume 2, at pages 253, 371, and 374, there is reference to the participants Sayo, Starchild, Pocopene, Assjump, Keezers, and Play. At Volume 3, at 32, 35, 42, 48, 89, and 92, there is reference to participants Geedy, Keys, Gord, Askjeeves, Ganymede, Coos, Doobie, and Afufi. And at Volume 4, at 24, 63, 122, 123, 147, and 221, there is reference to Chase Fox, Father, Damon 2K, Darkside, Cadets, Cosmo, and Kidbro. Your Honor, it is not the case that this was a small group of 12 participants. Nor was it the case that this was a closed group. The testimony of Officer Barnes introduced chat rooms that showed the participants considerable anxiety about the members of the groups that were coming in and out of the chat rooms. Likewise, the testimony of Leon explained that one of GRIAS's core duties as president of the chat room was to admit new members. So it is not the case, as a matter of fact, that this was a closed group of 12 participants. With regard to the Double Jeopardy issue, Your Honors, the government admits that there was error on prong one of the plain error test. And it is undisputed that plain error is the analysis this court should use. We could change that here, couldn't we, just by modifying the judgment? Correct. Correct, Your Honor. If this court were to find that there was reversible plain error, the judgment could be modified here. Right, because multiple convictions in this situation is categorically unlawful. That's correct, Your Honor, which is part of the reason that we, the government is conceding that there is error on prong one. Right, and the error is plain. Everybody should have known that. The Rutledge Principle is well known, and you should have known it, and the judge should have known it, and the convictions merged. You can charge it this way, but you can't get three convictions in this situation. You can only get one. So there should have been entry of judgment of conviction only on the CCE count and not on all three. That is correct, Your Honor, of course, under a Blockberger analysis. However, Blockberger principles do not apply when this offense, or excuse me, when the punishments are based on different offenses. This is the same offense. It's the same set of conspiracies, not set of conspiracies. It's the same conspiracy, and the difference in the duration as charged in the indictment doesn't make any difference here because it's all the same conspiracy or enterprise for the lead offense in this case, which is count three, the CCE offense. The fact that you didn't charge the first three years of the activity, even though you knew about it for the CCE offense, doesn't get you off the hook on the double jeopardy violation. This is coterminous conduct. You knew about it. You should have recognized that this was a double jeopardy violation. That's true, Your Honor, which is why we agreed that there was error on prong one. Do you see a practical difference? There is no practical difference. Well, of course, we do not. It is not the government's suggestion that his rights were not affected by a conviction. We do not argue that. And if this court were to find that the counts were lesser included, I think the difference would be something of, the counts were concurrent, so the difference would be something of just a $200 fee. But the government contends that any error on prong one was not plain because as this court established the factors in Castro, there are several factors that the court should consider when deciding if a conspiracy is one or two for double jeopardy purposes. Some of the factors, as Your Honor mentioned, are present here, which would suggest that they were two conspiracies. They involved different time zones, excuse me, different time periods. From 2003 to 2006, there was six over acts, and the government took pains to present evidence of those acts. The testimony of Jonathan Bridberg. But it's all the same course of conduct among the same individuals, covering the same time period, 2003 to 2012. That's correct, Your Honor. The fact that you didn't include the first three years on the CCE count is irrelevant. The same conduct is going on over that duration of time. That's what the facts show. This should have been obvious to everyone that this is a double jeopardy violation. Again, Your Honor, in a candidate assessment, we concede that there was error on prong one. Right, and it's plain as day, and everybody missed it. The government does not agree on that front, Your Honor. We do believe that it was not plain because of the considerable evidence the government presented between 2003 and 2006. And this court in Shiro has explained that when deciding if a conspiracy is one or two for double jeopardy purposes, one of the factors to consider is whether. Are you actually arguing that the period of 2003 to 2006 is a distinct and separate independent conspiracy? I am not, Your Honor. I'm arguing that it was not plain or obvious. How? I don't want to be, you know, a dead assistant U.S. attorney, but how could it not be? Because the, Your Honor, because the government took pains to present evidence at trial and also alleged in the indictment of criminal conduct between 2003 and 2006. And again, the government concedes that there was a double jeopardy violation here and is not suggesting that it didn't occur, but is suggesting that it wasn't plain because of the evidence that was presented between 2003 and 2006. That's an extremely strained argument. I understand, Your Honor. And finally, there was no... Unworthy of the Justice Department. Understood, Your Honor. Understood. You had your marching orders. Yep. Thank you, Your Honor. With regard to the sentencing, defendants do not claim that there were any... Boy, are you lucky it's the three of us. I can think of some carrying on in here. Go ahead. Defendants do not suggest there were any procedural defects during sentencing. Instead, they really suggest that or they disagree with the way that the sentencing judge weighed the substantive factors. And this does not... So this is basically a reasonableness challenge to the sentence. Is that right? Correct, Your Honor. And a within-guidelines sentence is entitled to a presumption of reasonableness. Yeah, but we still have an obligation. We always get that bromide thrown at us, but we still have to look at these. I'm really concerned about this Mr. Grieve's sentence. Other than putting the government to its burden, what else did he really do that distinguished him from the others who got far less sentences? I know somebody in the group called him the president, but what did he do that made somebody call him the president? We don't punish people because other people put labels on them. Your Honor, as president, he was also referred to as OPS, as the operational leader of the chatroom. What did that mean? He was responsible for moving the chatrooms when he was concerned about law enforcement discovering the location of the chatrooms. He was then also responsible for distributing the location of the chatrooms as well as the passwords for the chatroom. And he was also, as I previously mentioned, in charge of determining admissions for the chatrooms. His sentence was within the middle of the guidelines range, and there was, in fact, another conspirator that was sentenced to 360 months, which is the same amount that Grieve's got. So his argument that he received a disproportionate sentence compared to his conspirators is not accurate. Could you refresh my recollection? Where in the record am I going to find the evidence that he moved the chatroom and that he, in effect, served as the admissions director? One moment, Your Honor. Were there witnesses called, or was that in the PSR? It was during the testimony of Babitu and Leon, and I believe I'm in Volume 4 at page 72, Your Honor. Thank you. McCuller's sentence, likewise, was within the guidelines, and McCuller's and the sentencing judge in both cases considered the scope and duration of the conspiracy as well as the outstanding number of images and videos. So the government suggests that the within-guidelines sentences here were reasonable. If the Court has no further questions, the government requests you affirm the convictions and sentences. Thank you. Thank you. How much time? Add another minute, please. The maximum punishment on count one is the minimum on count three. Say it again. The maximum punishment on count one is the minimum on count three. The government's use of this indictment and the way they did to this criminal trial lawyer was as obvious and plain as can be. And I agree with you, Your Honor, that they should have known. They should have corrected it at instructions. They should have corrected it at the close of the case. They shouldn't have gone to closing argument. And in this way, by stacking them in the way that they did, the life sentence and the 30-year high sentence on Mr. Grise was inevitable. I mean, it was like axiomatic. This is the minimum. You're not getting the minimum. You got the maximum on the other ones. That was use of improper unconstitutional counts to stack in extreme sentences on people for conduct, which was the same. So apart from your reasonableness argument as to the sentences, you're asking for resentencing and a double jeopardy violation rather than just a correction of the record here. That's absolutely right. And let me just talk about the concept here of a government waiver. Now, at trial, there was two co-conspirators. They brought in three others. And the evidence at trial was that there was something like 10 search warrants executed. There were 11 or 12 people named in this conspiracy. The three government witnesses that they brought in identified as many as 8 or 9 or 10 in the conspiracy with them. That was their case. That was their proof. At no time in opening statement, at no time in closing argument, at no time in sentencing did they make this 35 to 40 people, this 25 to 30 people argument. All we have is the record of evidence from the co-conspirators themselves. And from their mouths in front of that jury, they identified some 8 to 10 other people, 11, 12 at the most. But does it matter? Yes, it does matter. Because essentially it's this. You think about it like as lawyers. I make my law library available to somebody. He makes his law library available to me. They're all marked. We go into each other's law libraries. I'm not noticing in advertising. I'm sharing my library with another lawyer. And if there's 10 lawyers who do it, that's simply not public notice and advertisement like a library or like Amazon or like, you know, any of the book publishers in the Internet. That's the difference here. Right. But if that count has to be vacated and the base conspiracy to distribute count has to be vacated because of the double jeopardy violation, I think that's the. Well, no, I'm going back to my first argument. I understand. But we may not have to address that. Very well. But anyway, that's the position we take on this. And I thank you so much for the extra time. Oh, my gosh. A minute. I'm so sorry. Go ahead. How much? OK. Your Honors, with regard to Mr. Grise and this notion that he was somehow the president or the leader, this was offered in testimony by a cooperating co-defendant, and there was no other evidence offered that he orchestrated anything, had exclusive control over the admission of people into the group. He may have been there at the beginning, but there was no evidence offered at trial that he had the keys to the castle and no one else did. Well, there was this one witness. Right, a cooperating co-defendant. Who was believed. But that was all the evidence. There was no other evidence offered, and it wasn't in the pre-sentence report. And all of the members had equal access to everything, all the decision making. Mr. Grise was at the same level as all of his co-conspirators. And with regard to the sentencing, again, he committed the same conduct that most people in these kinds of cases commit. And no other conduct. There was no proof that the government offered of any images going to other people outside of this group, or no proof offered by the government about where the images came from. This is a closed group. This was people sitting around their kitchen table. Congress wanted to penalize people for going into larger realms. They didn't want people putting out electronic classifieds. The Sewell case with the use of the Kaza platform, that allowed unlimited access to anyone who came across it. This was different here. This was truly a closed group. And Mr. Grise's conduct was amongst the least egregious of all the people who were involved in this. No contact offenses, no production, and he cooperated with the police. And certainly his sentence is too long, and counts two and three should be vacated. Well, thank you. Mr. Mejia and Mr. Paul, you were both appointed, were you not? You're both CJA. You were appointed. I was appointed, Your Honor. Well, you both have our thanks. Appointed, retained. Everyone has our thanks. The government has our thanks. And the case will be taken under advisement, of course. Thank you very much.